# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CRAIG MOSS,** | : | |
| **Petitioner** | : | |
| | : | **No. 1:19-cv-106** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **SUPERINTENDENT** | : | |
| **DEBALSO, *et al.*,** | : | |
| **Respondents** | : | |

## <u>MEMORANDUM</u>

Presently before the Court is *pro se* Petitioner Craig Moss ("Petitioner")'s amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 11.) Respondents filed a response addressing the merits of the § 2254 petition on June 23, 2021. (Doc. No. 30.) Petitioner's § 2254 petition is, therefore, ripe for disposition.

## I. BACKGROUND

### A. Procedural History

On January 15, 2017, in York County, Pennsylvania, Petitioner was arrested and charged with: (1) terroristic threats with the intent to terrorize another; (2) possession of an instrument of crime; (3) simple assault; (4) public drunkenness; (5) disorderly conduct engaging in fighting; and (6) three (3) counts of harassment. *See Commonwealth v. Moss*, Docket No. CP-67-CR-0001471-2017 (York Cty. C.C.P.). A mistrial was declared on March 8, 2018. *Id.* Following retrial on March 18, 2018,

Petitioner was found guilty of possession of an instrument of crime, simple assault, and two (2) counts of harassment. *Id.* The Superior Court of Pennsylvania set forth the background of the case as follows:

> On March 16, 2017, the Commonwealth charged [Petitioner] by way of a criminal information with terroristic threats, [possession of an instrument of crime], simple assault, public drunkenness, disorderly conduct, and three counts of harassment. The charges arose out of an incident that took place on January 14-15, 2017, at Kiro's bar. At trial, although there were minor inconsistencies, the Commonwealth witnesses testified consistently about the events of the evening.
>
> That night, Breanne Spangler, her fiancé Daniel Leiphart, and a group of their friends, who included Brittany Graves, Bridget James, and Emily and Devon Wallick, were at Kiro's to celebrate its last night in business. [Petitioner] and his wife, Tara Moss, were also present but were not part of Spangler's group.
>
> At some point during the event, [Petitioner] and Tara Moss left. [Petitioner] returned alone a few minutes later and began to behave in an increasingly belligerent and drunken fashion. He started to accost and grope some of the women in Spangler's group, ignoring their requests to stop.
>
> When Leiphart became aware of the problem, he and [Petitioner] engaged in a verbal dispute, which ended when Leiphart punched [Petitioner] on the chin. The bar's owner, Ronald Weagley, now aware of the complaints about [Petitioner's] behavior, escorted him off the premises.
>
> The group of friends remained in the bar. Immediately prior to closing, at approximately 2:00 a.m., Tara Moss telephoned Weagley and informed him [Petitioner] had armed himself with knives and was returning to the bar. Weagley locked the front door of the bar, called 911 and told the patrons not to leave.
>
> Despite this, Leiphart and several others exited the bar through the side emergency exit. Although friends kept Leiphart and [Petitioner]

separated, a quarrel ensued in the parking lot next to Kiro's and continued into a nearby alley.

[Petitioner] brandished a knife, swinging it from side to side while taunting the unarmed Leiphart. Spangler inserted herself between [Petitioner] and Leiphart, grabbed the knife-blade, and attempted to deescalate the conflict. [Petitioner] repeatedly told her he did not want to hurt her but wanted to hurt Leiphart. Spangler pushed against [Petitioner] backing him away from Leiphart while [Petitioner] continued to swing the knife and state that he wanted to hurt Leiphart.

Other bar patrons backed Leiphart away from [Petitioner]. [Petitioner] did not leave the scene until he heard police sirens, at which point he allowed Spangler to grab the knife. When police apprehended the fleeing [Petitioner], they heard one knife fall off him, which they recovered under his body, and found two other knives on his person. The police located several other knives in the area where the altercation occurred.

*Commonwealth v. Moss*, No. 1533 MDA 2018, 2020 WL 618580, at *1-2 (Pa. Super. Ct. Feb. 10, 2010). On April 9, 2018, Petitioner was sentenced to one (1) year minus one (1) day to two (2) years minus two (2) days of incarceration, with credit for time served. *Moss*, Docket No. CP-67-CR-0001471-2017. Petitioner subsequently filed a timely post-sentence motion, which the trial court denied. *Id.* On September 12, 2018, Petitioner filed his notice of appeal to the Superior Court of Pennsylvania. *Id.*

On January 17, 2019, while his direct appeal was still pending, Petitioner filed his initial § 2254 petition (Doc. No. 1) and a motion for a temporary stay and abeyance (Doc. No. 2) with this Court. In a Report and Recommendation entered on February 1, 2019, Magistrate Judge Carlson recommended that Petitioner's motion for a stay and abeyance be denied and that his § 2254 petition be dismissed

without prejudice to Petitioner's right to refile his petition once he exhausted his state court remedies. (Doc. No. 6.) Petitioner filed timely objections, asserting that he met the three (3) requirements for a stay and abeyance set forth in *Rhines v. Weber*, 544 U.S. 269 (2009). (Doc. No. 7.) Petitioner argued that if the Court did not stay the action, he would "never be able to file a habeas corpus to challenge the violations of his federal [constitutional] rights as he is no longer in custody for this conviction." (*Id.* at 2.) In a Memorandum and Order entered on March 21, 2019, the Court sustained Petitioner's objections, rejected the Report and Recommendation, granted Petitioner's motion for a stay and abeyance, and stayed the above-captioned case pending Petitioner's exhaustion of his available state court remedies. (Doc. Nos. 8, 9.) The Court directed Petitioner to notify the Court of such within thirty (30) days from the time of final denial and request that the stay be vacated. (Doc. No. 9.)

On February 10, 2020, the Superior Court of Pennsylvania affirmed Petitioner's judgment of sentence. *See Moss*, 2020 WL 618580, at *1. On February 19, 2020, Petitioner filed a motion to proceed (Doc. No. 10) and an amended § 2254 petition (Doc. No. 11). Those filings indicated that Petitioner was no longer incarcerated. In an Order dated February 25, 2020, the Court granted Petitioner's motion to proceed and lifted the stay. (Doc. No. 12.) In an administrative Order dated that same day, the Court advised Petitioner of the limitations on filing future

§ 2254 petitions and directed him to complete the enclosed Notice of Election and return it to the Court within forty-five (45) days. (Doc. No. 13.) Petitioner did not return the Notice of Election. Accordingly, on April 13, 2020, the Court directed Respondents to file an answer, motion, or other response to the amended § 2254 petition within twenty (20) days. (Doc. No. 14.)

On April 23, 2020, Respondents filed a motion to dismiss for lack of jurisdiction or, in the alternative, as moot. (Doc. No. 16.) Respondents asserted that the Court lacks jurisdiction because Petitioner's York County sentence expired on November 11, 2018, and, therefore, he was not in custody for purposes of that conviction when he filed his initial § 2254 petition. (*Id.* at 2-3.) In support, Respondents attached a copy of a York County Pre-Parole Investigation and Order indicating that Petitioner received 512 days of credit toward his sentence and that the maximum date of his sentence was November 11, 2018. (Doc. No. 16-1 at 1.) Respondents noted that Petitioner "was in custody due to his state parole violation which resulted from his conviction in the instant case at the time his [original § 2254 petition] was filed." (Doc. No. 16 at 3.) They asserted, however, that "even if this Court were to liberally construe [Petitioner's] Petition as an attack on his subsequently received parole revocation, such challenge was rendered moot upon [Petitioner's] completion of the parole violation sentence and release from incarceration." (*Id.* at 3-4.) Respondents also filed a motion "to temporarily stay

the deadline to file a full and complete response to the merits of [Petitioner's] Petition" pending resolution of their motion to dismiss. (Doc. No. 17.) Petitioner did not file a response to Respondents' motions. Accordingly, in a Memorandum and Order dated May 18, 2020, the Court granted Respondents' motion to dismiss and dismissed Petitioner's original § 2254 petition and amended § 2254 petition for lack of jurisdiction. (Doc. Nos. 18, 19.)

On January 21, 2021, Petitioner filed a motion for relief pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. (Doc. No. 20.) Petitioner asserted that he was entitled to relief because his York County sentence expired on January 13, 2019 and Respondents erroneously provided a document indicating otherwise to the Court. (*Id.* at 3-6.) Petitioner asked that the Court reinstate his § 2254 petition, sanction Respondents, and forward the matter to the Commonwealth's disciplinary board. (*Id.* at 6.) In an Order dated that same day, the Court directed Respondents to file a response to the Rule 60(b) motion. (Doc. No. 23.) After receiving an extension of time (Doc. Nos. 24, 25), Respondents filed their response on April 5, 2021, agreeing that Petitioner had been in custody on the challenged sentence when he filed his initial § 2254 petition (Doc. No. 26). In an Order dated April 8, 2021, the Court granted Petitioner's motion to the extent he sought relief pursuant to Rule 60(b)(1). (Doc. No. 27.) The Court vacated its May 18, 2020 Memorandum and Order dismissing Petitioner's § 2254 petitions for lack of jurisdiction and directed

Respondents to file a response addressing the merits of Petitioner's amended § 2254

petition. (*Id.*)

**B.  Habeas Claims Presented**

Petitioner raises the following claims for relief in his amended § 2254 petition:

1.  The Commonwealth failed to disprove Petitioner's affirmative defense of self-defense;

2.  The trial court's decision not to grant Petitioner's motion for direct acquittal due to insufficiency of the evidence was contrary to *Jackson v. Virginia*, 443 U.S. 307 (1979);

3.  The Commonwealth deprived Petitioner of his Fifth, Sixth, and Fourteenth Amendment rights when it used evidence at trial that was not stated in the indictment or bill of particulars to gain a conviction;

4.  The trial court deprived Petitioner of his Sixth and Fourteenth Amendment right to self-representation;

5.  Petitioner was constructively deprived of his Sixth Amendment right to effective cross-examination;

6.  Petitioner was constructively deprived of his right to a fair trial when the Commonwealth suppressed then destroyed requested video/audio evidence;

7.  The Commonwealth violated *Brady v. Maryland*, 373 U.S. 83 (1963), when it knowingly withheld favorable requested evidence;

8.  The trial court's decision to deny Petitioner's motion for neurological/head trauma expert was contrary to both *Clark v. Arizona*, 548 U.S. 735 (2006), and *McWilliams v. Dunn*, 582 U.S. __, 137 S. Ct. 1790 (2017);

9.  The trial court erred when it denied Petitioner's motion to dismiss for a violation of his Sixth Amendment right to a speedy trial; and

10. Petitioner was deprived of his Sixth Amendment right to counsel and the trial court/state law holding that Petitioner could not raise this claim on direct appeal constitutes cause to excuse the exhaustion/procedural default requirement.

(Doc. No. 11 at 4-5.)

## II. STANDARD OF REVIEW

Habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings." *See Dunn v. Colleran*, 247 F.3d 450, 468 (3d Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 414, 146 (1998)). The exercise of restraint by a federal court in reviewing and granting habeas relief is appropriate due to considerations of comity and federalism. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). "The States possess primary authority for defining and enforcing the criminal law. In criminal trials they also hold the initial responsibility for vindicating constitutional rights. Federal intrusions into state criminal trials frustrate both the States' sovereign power and their good-faith attempts to honor constitutional law." *Id.* States also have a recognized interest in the finality of convictions that have survived direct review within the state court system. *See Brecht v. Abrahamson*, 507 U.S. 619, 620 (1993).

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States." 28 U.S.C. § 2254(a). If a claim

presented in a § 2254 petition has been adjudicated on the merits in state court proceedings, habeas relief cannot be granted unless:

> the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d).

## III.    DISCUSSION

### A.    Exhaustion and Procedural Default

The Court must first determine whether Petitioner's grounds for relief presented in his § 2254 petition have been exhausted in the state courts and, if not, whether circumstances exist to excuse Petitioner's procedural default of his claims. Respondents maintain that Grounds Seven and Ten are procedurally defaulted. (Doc. No. 30 at 22-23.)

Absent unusual circumstances, a federal court should not entertain a petition for writ of habeas corpus unless the petitioner has satisfied the exhaustion requirement articulated in 28 U.S.C. § 2254(b). Under § 2254(c), a petitioner will not be deemed to have exhausted his available state remedies if he had the right under the law of the state to raise, by any available procedure, the question presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). A petitioner may exhaust a federal claim either by raising it on direct appeal or presenting it in post-conviction PCRA

proceedings. *See id.* at 845. In addition, a claim is exhausted when it has been "fairly presented" to the state court. *See Picard v. Connor*, 404 U.S. 270, 275 (1971). To that end, the federal habeas claim "must be the substantial equivalent of that presented to the state courts." *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). The petition must do so "in a manner that puts [the respondents] on notice that a federal claim is being asserted." *See Bronshtein v. Horn*, 404 F.3d 700, 725 (3d Cir. 2005). "The Supreme Court has instructed that a claim is not 'fairly presented' if the state court 'must read beyond a petition or brief . . . in order to find material' that indicates the presence of a federal claim." *Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 542 (3d Cir. 2014) (quoting *Baldwin v. Reese*, 541 U.S. 27, 32 (2004)). Moreover, a habeas corpus petitioner has the burden of proving the exhaustion of all available state remedies. *See* 28 U.S.C. § 2254. Overall, the exhaustion requirement advances the goals of comity and federalism while reducing "piecemeal litigation." *See Duncan v. Walker*, 533 U.S. 167, 180 (2001).

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is an absence of available State corrective process." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999). Claims deemed exhausted because of a state procedural bar are considered to be procedurally defaulted. *See, e.g.*, *Lines v. Larkins*, 208 F.3d

153, 159 (3d Cir. 2000). The district court then analyzes the claims under the procedural default doctrine. *See id.* The purpose of this rule is to prevent habeas petitioners from avoiding the exhaustion doctrine by defaulting their claims in state court. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). In *Cone v. Bell*, 556 U.S. 449 (2009), the United States Supreme Court explained:

> It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state law ground that is independent of the federal question and adequate to support the judgment. In the context of federal habeas proceedings, the independent and adequate state ground doctrine is designed to ensure that the State's interest in correcting their own mistakes is respected in all federal habeas cases. When a petitioner fails to properly raise his federal claims in state court, he deprives the State of an opportunity to address those claims in the first instance and frustrates the State's ability to honor his constitutional rights. Therefore, consistent with the longstanding requirement that habeas petitioners must exhaust available state remedies before seeking relief in federal court, we have held that when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review.

*Id.* at 465 (internal quotations and citations omitted).

However, habeas corpus review is not barred in every instance in which a state court invokes a procedural rule to preclude its review of the federal claims asserted by a state prisoner. A state procedural rule can preclude federal habeas corpus review "only when the state rule is 'independent of the federal question [presented] and adequate to support the judgment.'" *See Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (citing *Nara v. Frank*, 488 F.3d 187, 199 (3d Cir. 2007)). The

requirements of independence and adequacy are distinct. *See id.* A rule is "independent" if it is not dependent on any federal constitutional question, but "[a] state procedural ground will not bar federal habeas relief if the state law ground is 'so interwoven with federal law' that it cannot be said to be independent of the merits of a petitioner's federal claims." *See Johnson v. Pinchak*, 392 F.3d 551, 557 (3d Cir. 2004). A rule is "adequate" if it was "firmly established, readily ascertainable, and regularly followed at the time of the purported default." *See Levya*, 504 F.3d at 366 (quoting *Szuchon v. Lehman*, 273 F.3d 299, 372 (3d Cir. 2001)).

A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if the petitioner can demonstrate either: (1) "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law; or (2) that the failure to consider the claims will result in a "fundamental miscarriage of justice." *See Coleman*, 501 U.S. at 750. In order to show "cause and prejudice" sufficient to overcome a state court default, a petitioner must demonstrate the "cause" for his default and "prejudice" attributable thereto. *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000) (citing *Harris v. Reed*, 489 U.S. 255 (1989)). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488

(1986).  Under the "prejudice prong," a petitioner has the burden of showing "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *See United States v. Frady*, 456 U.S. 152, 170 (1982); *see also Holland v. Horn*, 519 F.3d 107, 112 (3d Cir. 2008).

To show a "fundamental miscarriage of justice," a petitioner must establish that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *See Schlup v. Delo*, 513 U.S. 298, 326 (1995).  Demonstrating actual innocence requires a stronger showing than that needed to establish prejudice. *See id.*  In *Goldblum v. Klem*, 510 F.3d 204 (3d Cir. 2007), the United States Court of Appeals for the Third Circuit explained the applicable two-step inquiry as follows. First, a "court must decide 'whether the petitioner has presented new reliable evidence . . . not presented at trial,'" and second, if a petitioner "puts forth new evidence not considered by the jury, a court asks 'whether it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *See id.* at 225 (citing *Hummard v. Pinchak*, 378 F.3d 333, 340 (3d Cir. 2004)).  If a petitioner can meet this standard by establishing "cause and prejudice" or a "fundamental miscarriage of justice," his default will be excused, and the Court may review the merits of the claim presented.  *See id.*

In Ground Seven, Petitioner asserts that the Commonwealth violated *Brady* by failing to disclose favorable discovery in the form of Officer Miller's supplemental narrative. (Doc. No. 11 at 16-17.) Petitioner avers that he did not learn of the existence of this document until he received discovery in the civil matter he filed in *Moss v. Miller*, 1:18-cv-2122 (M.D. Pa.). (*Id.* at 16.) Respondents assert that Ground Seven is not exhausted because Petitioner "neglected to raise this issue on appeal or collateral review." (Doc. No. 30.) The record, however, reflects that Petitioner did not file an application for a new trial based on after-discovered evidence with the Superior Court, but the Superior Court denied it without prejudice to his right to raise it in a "collateral petition." *Moss*, 2020 WL 618580, at *1 n.3.

In Ground Ten, Petitioner asserts that counsel was ineffective in several ways. (Doc. No. 11 at 25-44.) Petitioner raised some of these on direct appeal; others he raises for the first time in his § 2254 petition. Respondents maintain that such claims are waived because Petitioner failed to raise them on collateral review. (Doc. No. 30 at 54-60.) Upon review of the record, the Court agrees with Respondents that Petitioner never raised the following ineffective assistance claims before the state courts: (1) constructive denial of assistance of counsel by his overly long period of detention; (2) counsel's failure to obtain a medical expert; (3) counsel unreasonably advising him against testifying; (4) counsel's failure to object to inculpatory testimony provided by his spouse; and (5) failure to request that the judge recuse

himself. (*Id.* at 59-60.)  Consequently, because these claims are procedurally defaulted, the Court can entertain the merits only if Petitioner demonstrates cause and prejudice or a fundamental miscarriage of justice.  Petitioner, however, advances no compelling argument to establish that cause for the default exists or that a fundamental miscarriage of justice will occur if the Court does not consider these arguments. *See Coleman*, 501 U.S. at 750.

As noted *supra*, Respondents assert that Ground Seven and the remaining ineffective assistance arguments raised in Ground Ten are unexhausted because Petitioner did not raise them on collateral review.  Petitioner, however, asserts that his sentence has become final and he cannot now litigate these claims.  (Doc. No. 11 at 25.)  While the trial court addressed the merits of Petitioner's ineffective assistance claims in its Rule 1925(a) opinion, the Superior Court concluded that such claims were premature and must await collateral review, noting that none of the three recognized exceptions to that general rule applied. *Moss*, 2020 WL 618580, at *10 & nn.10-11.)

One of the three exceptions to the general rule in Pennsylvania that ineffective assistance claims must be raised in a PCRA petition is for "claims challenging trial counsel's performance where the defendant is statutorily precluded from obtaining PCRA review." *Commonwealth v. Delgros*, 183 A.3d 352, 361 (Pa. 2018).  As the Court previously noted in this matter, under Pennsylvania law, PCRA relief only

extends to those "currently serving a sentence of imprisonment, probation or parole for the crime" challenged. 42 Pa. C.S.A. § 9543(a)(1)(i); *see also Commonwealth v. O'Berg*, 880 A.2d 597, 599 (Pa. 2005). PCRA relief is unavailable to an individual who completes his sentence, no matter the collateral consequences of that sentence. *Commonwealth v. Hart*, 911 A.2d 939, 942 (Pa. Super. Ct. 2006). Petitioner previously maintained that the sentence he now challenges expired on January 14, 2019, rendering him ineligible to file a PCRA petition. (Doc. No. 8 at 5.) Relying on that reasoning, the Court previously stayed proceedings in this matter pending the conclusion of Petitioner's direct appeal.

Given this, the Court is not persuaded by Respondents' argument that Petitioner failed to exhaust Ground Seven and his remaining ineffective assistance arguments in Ground Ten because he did not file a PCRA petition. The record suggests that Petitioner's sentence expired well before his direct appeal was resolved, rendering him statutorily ineligible to file such a petition. The Court, therefore, declines to find that these claims are unexhausted and procedurally defaulted and will address the merits of these claims below.

## B. Merits of Petitioner's Claims

### 1. Grounds One and Two

In his first ground for relief, Petitioner maintains that the Commonwealth failed to disprove his affirmative defense of self-defense. (Doc. No. 11 at 5.) As his

second ground, Petitioner asserts that the trial court erred by not granting his motion

for direct acquittal due to insufficiency of the evidence. (*Id.* at 8.) Because the

Superior Court considered these claims together, this Court will as well.

With respect to these claims, the Superior Court wrote:

In his first two issues, [Petitioner] challenges the sufficiency of the evidence. Our standard of review is settled.

We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.

The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilty is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Mobley*, 14 A.3d 887, 889-90 (Pa. Super. 2011) (citation omitted). Here, the jury convicted [Petitioner] of [possession of an instrument of crime ("PIC")] and simple assault, and the trial court convicted him of harassment.

In his first claim, [Petitioner] does not dispute the proof of the elements of simple assault, therefore we will not address them at this point; instead, he argues the Commonwealth did not disprove his claim of self-defense. We disagree.

> The use of force against a person is justified when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person. *See* 18 Pa. C.S.[A.] § 505(a). When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt.

*Commonwealth v. Bullock*, 948 A.2d 818, 824 (Pa. Super. 2008).

In order for the Commonwealth to disprove self-defense, one of the following elements must exist: (1) the defendant used more force than was necessary to save himself from death, bodily injury, or the commission of a felony; (2) the defendant provoked the use of force; or (3) the defendant had a duty to retreat, which was possible to accomplish with complete safety. *See Commonwealth v. Burns*, 765 A.2d 1144, 1148-49 (Pa. Super. 2000), *appeal denied*, 782 A.2d 542 (Pa. 2001). However, "[a]lthough the Commonwealth is required to disprove a claim of self-defense arising from any source beyond a reasonable doubt, a jury is not required to believe the testimony of the defendant who raises the claim." *Bullock, supra* at 824.

Based upon our review of the record, the Commonwealth's evidence was sufficient to negate the elements of self-defense. The evidence presented at trial established, following the altercation with Leiphart, Weagley escorted [Petitioner] off the premises and [Petitioner] left the area for at least thirty minutes. [Petitioner] then chose to return to the bar and lay in wait for Leiphart armed with at least four knives.

When Leiphart exited the bar, [Petitioner] stated several times that he wanted to hurt him; [Petitioner] swung the knife in the direction of Leiphart whie acting in a violent and agitated manner. [Petitioner] ignored Spangler's attempts to defuse the situation, repeatedly stating he wanted to hurt Leiphart and did not retreat on his own. Rather, Spangler pushed him back. Leiphart was unarmed.

Accordingly, the evidence was sufficient to establish that Leiphart was not the aggressor. More importantly, the evidence was capable of establishing [Petitioner], armed with at least one knife, could not have reasonably believed he was at any real risk from Leiphart. The only person who claims there was an alternate version of the events was

[Petitioner] and the finder-of-fact was free to disbelieve his arguments in light of the overwhelming evidence offered by the Commonwealth. *See Commonwealth v. Rivera*, 983 A.2d 1211, 1222 (Pa. 2009) (jury free to discredit evidence offered by defendant relating to self-defense); *see also Commonwealth v. Jones*, 332 A.2d 464, 466 (Pa. Super. 1974) (*en banc*) (holding use of knife in response to fistfight is not justified use of deadline force). Moreover, the record demonstrates [Petitioner], who was on a public alley, had many opportunities to retreat. *See Commonwealth v. Gillespie*, 434 A.2d 781, 784 (Pa. Super. 1981) (holding opportunity to retreat existed because, "the fight occurred on a public sidewalk, with several avenues of retreat available[]"). [Petitioner's] first claim does not merit relief.

As [Petitioner's] second issue is actually a broad based challenge to each of his convictions, we will address each type of crime individually. Initially, we note [Petitioner's] argument in its entirety consists of citing to isolated bits of evidence he believes favors his argument along with random citations to several United States Supreme Court cases and one case from this Court, which, upon review, have no bearing upon the instant matter. He entirely disregards our standard of review, which requires we view the evidence in a light most favorable to the Commonwealth as verdict winner. Further, [Petitioner] overlooks the fact this Court does not re-weigh the evidence nor do we engage in credibility determinations.

We define simple assault by physical menace as, "attempts by physical menace to put another in fear of imminent serious bodily injury." 18 Pa. C.S.A. § 2701(a)(3). Serious bodily injury is "[b]odily injury which creates a substantial risk of death, or which cases serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa. C.S.A. § 2301. "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa. C.S.A. § 901(a). An individual acts intentionally with respect to a material element of an offense when, "it is his conscious object to engage in conduct of that nature or to cause such a result." 18 Pa. C.S.A. § 302(b)(1)(i).

Therefore, in order to sustain a conviction for simple assault by physical menace, the Commonwealth must prove an appellant "intentionally

plac[ed] another in fear of imminent serious bodily injury through the use of menacing or frightening activity." *Commonwealth v. Reynolds*, 835 A.2d 720, 726 (Pa. Super. 2003) (citation omitted). The act of brandishing a knife at a person is sufficient to sustain a conviction for simple assault by physical menace. *See Commonwealth v. Diamond*, 408 A.2d 488, 489-90 (Pa. Super. 1979) (finding sufficient evidence to sustain simple assault by physical menace conviction where defendant approached and gripped door handle of victim's car at 4:00 a.m., "especially since [defendant's] friend was simultaneously threatening [the victim] with a knife on the other side of the car").

As set forth previously, the Commonwealth's evidence at trial showed [Petitioner] swung the knife back and forth while threatening Leiphart. [Petitioner] repeatedly stated he wanted to hurt him. This evidence is sufficient to establish that [Petitioner] wanted to place Leiphart in fear of serious bodily injury. A reasonable person, seeing the man whom he earlier hit in a bar fight coming at him while shouting threats and waiving a knife, "will quite likely fear that such an injury is imminent." *Diamond*, 408 A.2d at 490. [Petitioner] must "be held to have intended such a foreseeable consequence to his actions." *Id.* Accordingly, we find the evidence was sufficient to sustain [Petitioner's] conviction for simple assault by physical menace.

In order to prove possession of an instrument of crime, the Commonwealth must show the defendant "possesses any instrument of crime with intent to employ it criminally." 18 Pa. C.S.A. § 907(a). The statute defines an instrument of crime as "[a]nything specially made or specially adapted for criminal use" or "[a]nything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriately for lawful uses it may have." 18 Pa. C.S.A. § 907(d). Evidence a defendant used a knife to attempt to perpetrate a crime is sufficient to sustain a conviction for PIC. *See Commonwealth v. Robinson*, 874 A.2d 1200, 1208-09 (Pa. Super. 2005) (holding use of knife to perpetrate robbery was sufficient evidence of PIC).

"PIC, by its definition, is an inchoate crime, meaning that a defendant only has to intend to employ the instrument of crime criminally; a defendant need not actually employ it or complete an associated crime." *Commonwealth v. Moore*, 103 A.3d 1240, 1252 (Pa. 2014) (citation omitted). "[R]ather, the focus is on whether the defendant possesses

the instrument for **any** criminal purpose." *Commonwealth v. Naranjo*, 53 A.3d 66, 71 (Pa. Super. 2012) (emphasis in original). The defendant's criminal purpose provides the basis for his liability; we can infer purpose from the circumstances surrounding the possession of the instrument of the crime. *See Commonwealth v. Andrews*, 768 A.2d 309, 318-319 (Pa. 2001).

"Intent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances." *Commonwealth v. Miller*, 172 A.3d 632, 641 (Pa. Super. 2017) (citation omitted), *appeal denied*, 183 A.3d 97 (Pa. 2018). Although a factfinder may infer criminal intent beyond a reasonable doubt based on circumstantial evidence, intent may not be inferred based on mere possession. *See in re A.V.*, 48 A.3d 1251, 1254 (Pa. Super. 2012).

Here, the evidence demonstrated [Petitioner] used kitchen knives to threaten Leiphart. Cleary, this was not in a manner appropriate for lawful use. The evidence supporting [Petitioner's] conviction for simple assault is sufficient to sustain his conviction for PIC. *See Robinson*, 874 A.2d at 1208-09.

{Petitioner] also challenges his two convictions for harassment. "A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person: [] strikes, shoves, kicks **or otherwise subjects the other person to physical contact**, or attempts or threatens to do the same[.]" 18 Pa. C.S. § 2709(a)(1) (emphasis added). "An intent to harass may be inferred from the totality of the circumstances." *Commonwealth v. Cox*, 72 A.3d 719, 721 (Pa. Super. 2013).

At trial, multiple witnesses testified [Petitioner] grabbed the buttocks of several women, including Emily Wallick and Bridget James, thus subjecting them to physical contact. The evidence also showed [Petitioner] ignored the women's request to stop. This is sufficient to show his intent to harass the women. *See Cox, supra* at 721; *see also* 18 Pa. C.S.A. § 2709(a)(1).

Accordingly, for the reasons discussed above, we find the evidence was sufficient to sustain [Petitioner's] convictions. His second claim does not merit relief.

*Moss*, 2020 WL 618580, at \*3-6 (citations to the record omitted).

The standard of review used by a federal court when addressing a claim regarding the sufficiency of the evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The credibility of witnesses, the resolution of conflicts of evidence, and the drawing of reasonable inferences from proven facts all fall within the exclusive province of the factfinder and, therefore, are beyond the scope of federal habeas sufficiency review. *See id.* Accordingly, the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *See Coleman v. Johnson*, 566 U.S. 650, 656 (2012).

Upon consideration of the Superior Court's thorough discussion and the evidence presented at Petitioner's trial, as described *supra*, the Court concludes that the state courts' conclusions were a reasonable determination of the facts in light of the evidence presented, and was neither contrary to, nor an unreasonable application of, clearly established federal law. To the extent Petitioner challenges the reliability of the evidence presented against him, a court reviewing a § 2254 petition has "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *see also Valenzuela v. Pennsylvania*, No. 18-1246, 2019 WL 4139285,

at *1 (E.D. Pa. Aug. 30, 2019) (noting that "[i]t is for the jury to sort out any inconsistences in the record"); *Davis v. Lavan*, No. 03-40211, 2004 WL 2166283, at *9 (E.D. Pa. Sept. 23, 2004) (noting that "a claim that a verdict is against the weight of the evidence is not cognizable on habeas review because it requires an assessment of the credibility of the evidence presented at trial, and a state court's credibility determinations are binding on a federal habeas court").  Petitioner, therefore, is not entitled to relief, and Grounds One and Two will be dismissed.

### 2.    Ground Three

As his third ground for relief, Petitioner asserts that the Commonwealth violated his Fifth, Sixth, and Fourteenth Amendment rights by using evidence at trial that was not "stated in the indictment or bill of particulars to gain a conviction." (Doc. No. 11 at 10.)  Plaintiff avers that he was specifically charged with holding a knife over his head in a stabbing position.  (*Id.*)  He claims, however, that the Commonwealth never offered any evidence that he had done so during the incident. (*Id.* at 11.)

With respect to this claim, the Superior Court stated:

In his third claim, [Petitioner] avers the Commonwealth violated his constitutional rights when "it used evidence at trial that was not stated in the indictment bills of particulars."  Specifically, [Petitioner] complains the Commonwealth charged him for holding the knife over his head in a stabbing position but the witnesses at trial only tested he was either swinging the knife or brandishing it.

This Court has stated:

> A purported variance between the indictment and the offense proved will not be fatal to the Commonwealth's case unless it could mislead the defendant at trial, involves an element of surprise prejudicial to the defendant's efforts to prepare his defense, precludes the defendant from anticipating the prosecution's proof, or otherwise impairs a substantial right of the defendant. Generally stated, the requirement is that a defendant be given clear notice of the charges against him so that he can properly prepare a defense.

> *Commonwealth v. Fulton*, 465 A.2d 650, 653 (Pa. Super. 1983) (citations omitted). Moreover, "a variance between the proof and the bill of particulars does not require a reversal unless the defendant has been prejudiced by the variance." *Commonwealth v. Delbridge*, 771 A.2d 1, 4-5 (Pa. Super. 2001) (citation omitted), *affirmed*, 859 A.2d 125 (Pa. 2004).

> Here, the criminal information stated in pertinent part, "[Petitioner] attempted, by physical menace, to put Danny Leiphart in fear of imminent serious bodily injury, by holding a knife over his head in a stabbing position **and/or** stating he was going to get victim." At trial, as noted above, multiple witnesses testified that, while holding the knife, [Petitioner] repeatedly stated he wanted to hurt the victim. Moreover, the difference between holding the knife over his head and swinging the knife in the direction of the victim is *de minimis*. [Petitioner] has utterly failed to address how this minor discrepancy between the information and the proof at trial prejudiced him. Therefore, his third claim does not merit relief. *See Delbridge*, 771 A.2d at 4-5.

*Moss*, 2020 WL 618580, at *6-7 (internal citations to the record omitted).

"To determine whether a variance violates the Constitution, federal courts look to 'whether or not there has been prejudice to the defendant,' focusing on the defendant's right to notice and his ability to defend himself at trial." *Real v. Shannon*, 600 F.3d 302, 307 (3d Cir. 2010) (quoting *United States v. Asher*, 854 F.2d

1483, 1497 (3d Cir. 1988)).  A variance violates the Constitution "only if it is likely to have surprised or otherwise has prejudiced the defense."  *United States v. Daraio*, 445 F.3d 253, 262 (3d Cir. 2006) (citing *United States v. Schurr*, 775 F.2d 549, 553-54 (3d Cir. 1985)).  In the instant case, Petitioner has not demonstrated that the minor discrepancy surprised or prejudiced his defense.  As discussed *supra*, the evidence presented at trial was sufficient to convict Petitioner, and the indictment and bill of particulars sufficiently informed Petitioner of the charges against him so that he could prepare an effective defense.  *See United States v. Somers*, 496 F.2d 723, 746 (3d Cir. 1974) (noting that a variance is not unconstitutional unless the defendant was "so surprised by the proof adduced that he was unable to prepare his defense adequately").  Petitioner, therefore, has not demonstrated that the state court's disposition of his second ground for relief was contrary to, or was an unreasonable application of, United States Supreme Court precedent.  Moreover, Petitioner has not demonstrated that the state court's determination of the facts was unreasonable.  Accordingly, Petitioner's third ground for relief will be dismissed.

### 3.    Ground Four

As his fourth ground for relief, Petitioner asserts that the trial court violated his Sixth and Fourteenth Amendment rights by depriving him of his right to self-representation.  (Doc. No. 11 at 11.)  With respect to this claim, the Superior Court stated:

In his fourth claim, [Petitioner] contends that the trial court deprived him of his right of self-representation. We disagree.

We review a trial court's grant or denial of a defendant's request to proceed *pro se* for an abuse of discretion. *Commonwealth v. El*, 977 A.2d 1158, 1167 (Pa. 2009). The Pennsylvania Supreme Court has "defined a court's discretion as the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. An abuse of that discretion is not merely an error of judgment, but . . . [a] manifestly unreasonable . . . result of partiality, prejudice, bias or ill will." *Id.* (quotations and citation omitted).

In *El*, our Supreme Court explained,

> A criminal defendant's right to counsel under the Sixth Amendment includes the concomitant right to waive counsel's assistance and proceed to represent oneself at criminal proceedings. The right to appear *pro se* is guaranteed as long as the defendant understands the nature of his choice. In Pennsylvania, Rule of Criminal Procedure 121 sets out a framework for inquiry into a defendant's request for self-representation. Pa. R. Crim. P. 121. Where a defendant knowingly, voluntarily, and intelligently seeks to waive his right to counsel, the trial court . . . must allow the individual to proceed *pro se*.

> The right to waive counsel's assistance and continue *pro se* is not automatic however. Rather, only timely and clear requests trigger an inquiry into whether the right is being asserted knowingly and voluntarily . . . . Thus, the law is well established that in order to invoke the right of self-representation, the request to proceed *pro se* must be made timely and not for purposes of delay and must be clear and unequivocal.

*Id.* at 1162-63 (most citations, quotation marks and footnotes omitted).

Our review of the record reveals [Petitioner] never made a clear and unequivocal assertion of the right to proceed *pro se*. Rather, the record shows the trial court made a yeoman's effort in an attempt to ascertain what [Petitioner] wanted and to explain to him Pennsylvania law does

not allow his desire, which was clearly hybrid representation. *See id.*; *see also Commonwealth v. Padilla*, 80 A.3d 1238, 1259 (Pa. 2013), *cert. denied*, 573 U.S. 907 (2014). The discussion concluded as follows:

> THE COURT: So how are you proceeding?
>
> [Petitioner]: I have no choice but to allow counsel to represent me.
>
> THE COURT: So Mr. Jefferis will be the lead counsel, and you will be working with him or consult with him?
>
> [Petitioner]: That is correct, sir. However, it is my understanding that a represented person is allowed to give opening arguments. That is a Pennsylvania Rule of Criminal Procedure.
>
> THE COURT: Whoever the attorney is may make the opening argument. In other words, what you can't do is you can't cherry pick or break this up into pieces where you say, I'll make the opening statement, you make the closing statement, I'll examine this witness, you examine that witness. You can be *pro se*, or you can be represented by an attorney. What you don't get to do is have this kind of hybrid representation.
>
> [Petitioner]: And I understand that, sir, and like I said, due to my 14-month unjust incarceration, I would not be able to represent myself.
>
> ****
>
> THE COURT: . . . are you still willing to have him proceed as your counsel?
>
> [Petitioner]: Indeed, I am.

Petitioner did subsequently indicate that he wished to represent himself. However, immediately thereafter he stated that it didn't matter who represented him.

[Petitioner] does not identify any other place in the record where he clearly requested to proceed *pro se*. And our independent review has revealed none. Therefore, the record does not contain a clear and unequivocal request to proceed *pro se*. Accordingly, [Petitioner's] fourth claim does not merit relief. *See El*, 977 A.2d at 1162-63.

*Moss*, 2020 WL 618580, at *7-8 (citations to the record omitted).

"[A] defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so." *Faretta v. California*, 422 U.S. 806, 807 (1975). To assert the right to self-representation, a defendant "must voluntarily and intelligently elect to conduct his own defense, and most courts require him to do so in a timely manner." *Martinez v. Court of Appeal*, 528 U.S. 152, 161-62 (2000). After a defendant asserts such a desire, "he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 835. Courts "must indulge every reasonable presumption against a waiver of counsel;" therefore, "a defendant must clearly and unequivocally ask to proceed *pro se*." *Buhl v. Cooksey*, 233 F.3d 783, 790 (3d Cir. 2000). Upon review of the record, the Court cannot conclude that Petitioner clearly and unequivocally asked to proceed *pro se*. The colloquy set forth above occurred prior to the start of Petitioner's first trial, which, as noted *supra*, ended in a mistrial. At no other time did Petitioner clearly and unequivocally ask to proceed *pro se*. Petitioner, therefore, has not demonstrated that the state court's disposition of his

second ground for relief was contrary to, or was an unreasonable application of, United States Supreme Court precedent. Moreover, Petitioner has not demonstrated that the state court's determination of the facts was unreasonable. Accordingly, Petitioner's fourth ground for relief will be dismissed.

### 4. Ground Five

In his fifth ground for relief, Petitioner maintains that the trial court constructively deprived him of his Sixth Amendment right to effective cross-examination. (Doc. No. 11 at 12.) He avers that prior to the start of his trial, defense counsel informed the court that it wanted to raise the fact that Spangler planned to commit perjury "based [solely] on the threat of imprisonment by the Commonwealth unless she changed her story to fit the Commonwealth's neo-version of events to convict Petitioner." (*Id.* at 13.) Petitioner argues that the trial court assured counsel that this concern could be addressed through cross-examination, but that when counsel attempted to do so, the trial court sustained the Commonwealth's objection. (*Id.*)

> With respect to this claim, the Superior Court noted:
>
> In his fifth claim, [Petitioner] complains the trial court denied him the right to cross-examine Commonwealth witness Breanne Spangler effectively. The court sustained the Commonwealth's objection to a question about Spangler's desire not to press charges in the matter. *See* Appellant's Brief, at 13-15. Specifically, [Petitioner] points to the following:
>
>> [Defense Counsel]: At first, you did not want to press charges?

[The Commonwealth]: Objection, Your Honor.

[Defense Counsel]: I think this goes to the witness's state of mind.

[The Commonwealth]: Relevance, though.

[Defense Counsel]: Bias.

[The Commonwealth]: Approach?

THE COURT: Come up here.

****

[Defense Counsel]: Your Honor, this would directly go to her— this would directly go to her bias on why she's testifying here today. She changed her mind about pressing charges once her boyfriend or fiancé was charged.
[The Commonwealth]: It was never her option to press charges or not. It's not that she could've said, well, I want to press charges [sic] and this would've gone away.

[Defense Counsel]: I know, but she didn't want to cooperate or testify to what she testified to here today.

THE COURT: I'm going to sustain the objection.

N.T. Second Trial, 3/12/18, at 92-93.

This Court has held:

[w]ith regard to evidentiary challenges, it is well established that [t]he admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias,

30

prejudice, ill-will or partiality, as shown by the evidence of record. Furthermore, if in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. Serrano*, 61 A.3d 279, 290 (Pa. Super. 2013) (citations and internal quotation marks omitted).

A criminal defendant has the constitutional right to confront witnesses against him; this right includes the right of cross-examination. *See Commonwealth v. Buksa*, 655 A.2d 576, 578 (Pa. Super. 1995). Cross-examination can be used to test a witness's version of the events, to impeach his credibility, or to establish his motive for testifying. *See id.*

However, even if we were to find error, an appellant must show that the court's decision prejudiced him. Our Supreme Court has stated:

An error will be deemed harmless where the appellate court concludes beyond a reasonable doubt that the error could not have contributed to the verdict. If there is a reasonable possibility that the error may have contributed to the verdict, it is not harmless. In reaching that conclusion, the reviewing court will find an error harmless where the uncontradicted evidence of guilty is so overwhelming, so that by comparison the error is insignificant . . .

*Commonwealth v. Mitchell*, 839 A.2d 202, 214-15 (Pa. 2003) (citation omitted).

In the instant matter, we need not decide whether the trial court erred in sustaining the objection because, if there was error, it was harmless. The record reflects Spangler's fiancé, Leiphart, admitted he threw the first punch in the altercation in the bar; the Commonwealth charged him because of it; and he pleaded guilty to harassment. N.T. Second Trial, 312/18, at 135-37, 142-43.

Moreover, there were multiple witnesses to the event, and the witnesses' testimony was consistent. *See* N.T., 3/12-13.18, at 70-80, 97-107, 118-25, 133-42, 154-61, 165-70, 175-87. Thus, regardless of whether Spangler was reluctant to testify or was biased against

[Petitioner], witnesses Leiphart, James, Graves, Weagler, and the Wallicks all confirmed her testimony. *See id.* Given this, we find [Petitioner] has not and cannot show the absence of this cross-examination prejudiced him. Therefore, this claim does not merit relief. *See Mitchell*, 839 A.2d at 214-15.

*Moss*, 2020 WL 618580, at *8-9.

As the Eastern District of Pennsylvania recently noted:

The Sixth Amendment guarantees every criminal defendant the right "to be confronted with the witnesses against him." This right includes the ability of every criminal defendant to test the credibility of witnesses through cross-examination. The Supreme Court held, however, "[i]t does not follow . . . that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness." The trial court instead retains discretion to impose reasonable limits on the scope of cross-examination "based on concerns about, among other things, harassment, prejudice, confusion on the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." In sum, the Sixth Amendment "guarantees *an opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."

*Heyward v. Garvin*, No. 20-6098, 2021 WL 1893218, at *18 (E.D. Pa. May 11, 2021) (citations omitted).

Upon review of the record, the Court agrees with Respondents that Petitioner has not demonstrated a violation of his Sixth Amendment rights. The trial court's limitations on Petitioner's cross-examination of Spangler was harmless. On cross-examination, Leiphart admitted that he pled guilty to harassment for punching Petitioner inside the bar. (Doc. No. 30-1 at 318-19.) Moreover, a review of the trial transcript indicates that the witnesses against Petitioner provided consistent

testimony regarding the events that occurred. Thus, even if Petitioner had been able to cross-examine Spangler about her bias, he has not demonstrated that the results of his trial would have differed. Petitioner, therefore, has not demonstrated that the state court's disposition of his second ground for relief was contrary to, or was an unreasonable application of, United States Supreme Court precedent. Moreover, Petitioner has not demonstrated that the state court's determination of the facts was unreasonable. Thus, Petitioner's fifth ground for relief will be dismissed.

### 5. Grounds Six and Seven

As his sixth ground for relief, Petitioner asserts that he was denied a fair trial when the Commonwealth suppressed then destroyed requested video/audio evidence. (Doc. No. 11 at 14.) Petitioner maintains that at the end of his first trial, which ended in a mistrial, the District Attorney violated his Sixth and Fourteenth Amendment rights by recording testimony on his iPhone and then deleting it before allowing the defense an opportunity to review it. (*Id.* at 15.) He avers that the loss of what actually took place between the District Attorney and witness Devon Wallick requires that his convictions be vacated. (*Id.* at 15-16.) In his seventh ground for relief, Petitioner avers that the Commonwealth failed to disclose exculpatory evidence in the form of Officer Miller's supplemental narrative. (Doc. No. 11 at 16-17.) As discussed above, the Court has concluded that Petitioner exhausted this claim by attempting to raise it before the Superior Court and that he

was unable to raise it on collateral review. The Court, therefore, will discuss the

merits of this claim below.

With respect to Petitioner's sixth claim for relief, the Superior Court stated:

In his sixth claim, [Petitioner] argues that the Commonwealth destroyed evidence in violation of the United States Supreme Court's decision in *Brady v. Maryland*, 373 U.S. 83 (1963). We disagree.

Again, we note that we review evidentiary challenges under an abuse of discretion standard. *Serrano*, 61 A.3d at 290.

The law governing alleged *Brady* violations is settled.

Under *Brady* and subsequent decisional law, a prosecutor has an obligation to disclose **all exculpatory information** material to the guilt or punishment of an accused, including evidence of an impeachment nature. To establish a *Brady* violation, an appellant must prove three elements: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued. The burden rests with the appellant to prove, by reference to the record, that evidence was withheld or suppressed by the prosecution. The evidence at issue must have been material evidence that deprived the defendant of a fair trial. Favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Ovalles*, 144 A.3d 957, 965 (Pa. Super. 2016) (citations and quotation marks omitted) (emphasis added).

In *Commonwealth v. Feese*, 79 A.3d 1101 (Pa. Super. 2013), this Court discussed the appropriate standard to apply in cases where, as here, the appellant alleges the Commonwealth destroyed potentially useful

evidence. The *Feese* court determined the standard announced by the United States Supreme Court in *Arizona v. Youngblood*, 488 U.S. 51 (188) applies, and "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Feese*, 79 A.3d at 1108 (citation omitted). The Court further stated, "[w]hen the value of such evidence was not clear before its destruction, the burden is on the defense to demonstrate bad faith." *Id.* at 115.

Here, [Petitioner] alleges the Commonwealth destroyed an audio recording made by the trial prosecution during his initial interview with Commonwealth witness Devon Wallick. The parties litigated the issue of the destroyed audio recording at the second hearing on [Petitioner's] post-sentence motions.

At the hearing, the Commonwealth explained it had not previously interviewed Wallick, but it subpoenaed him and he appeared to testify at [Petitioner's] first trial. The trial assistant district attorney wanted Wallick to speak with a detective; because he did not have any paper with him, he recorded Wallick's contact information on his cell phone. He later destroyed the recording. A detective conducted a substantive interview with Wallick and the Commonwealth turned over the notes of that interview to [Petitioner].

We have reviewed the record in this matter. [Petitioner] does not dispute he received the interview notes. Further, the trial court specifically found the recording was not exculpatory, and noted, "any exculpatory evidence would have been contained in the actual interview with detectives, which produced a report, which was turned over to the defense." [Petitioner] has not presented any evidence that would call this finding into doubt. Moreover, [Petitioner] has not argued any facts demonstrating the Commonwealth acted in bad faith. Therefore, [Petitioner's] sixth claim does not merit relief. *See Feese*, 79 A.3d at 1111.

*Moss*, 2020 WL 618580, at *9-10 (citations to the record omitted).

*Brady* violations occur when "(1) evidence was suppressed; (2) the evidence was favorable to the defense; and (3) the evidence was material to guilt or

punishment." *Simmons v. Beard*, 590 F.3d 223, 233 (3d Cir. 2009) (quoting *United States v. Risha*, 445 F.3d 298, 303 (3d Cir. 2006)). Evidence is material if "there is a reasonable probability that, but for the prosecution's failure to disclose the evidence, 'the result of the proceeding would have been different.'" *Harshman v. Sup't, State Corr. Institution at Rockview*, 368 F. Supp. 3d 776, 790 (M.D. Pa. 2019) (quoting *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995). A "reasonable probability" of a different result exists if the suppression of evidence "undermines confidence in the outcome of the trial." *Kyles*, 514 U.S. at 433-34. Moreover, failing to preserve potentially useful evidence does not violate due process unless the defendant can demonstrate that the state acted in bad faith. *See Youngblood*, 488 U.S. at 58.

Upon review of the record, the Court agrees that Petitioner has not demonstrated that the deputy district attorney acted in bad faith. The parties litigated this issue during the second hearing on Petitioner's post-sentence motions, and the Commonwealth established that the recording merely contained Devon Wallick's contact information so that a follow-up interview—the notes from which were provided to the defense—could be scheduled. (Doc. No. 30-1 at 719-37.) Moreover, as noted during the hearing, Petitioner received a full opportunity to cross-examine Wallick during his trial. (*Id.* at 734.) Nothing in the record suggests that, but for the prosecution's failure to produce this recording, the result of Petitioner's trial would have been different. Petitioner, therefore, has not demonstrated that the state court's

disposition of his second ground for relief was contrary to, or was an unreasonable application of, United States Supreme Court precedent. Moreover, Petitioner has not demonstrated that the state court's determination of the facts was unreasonable. Accordingly, his sixth ground for relief will be dismissed.

In his seventh ground, Petitioner maintains that the Commonwealth violated *Brady* by not disclosing a copy of Officer Miller's supplemental narrative. (Doc. No. 11 at 16-17.) Petitioner suggests that the supplemental narrative indicates that both Leiphart and an individual named Scott hit Petitioner. (*Id.* at 17.) Petitioner avers that Leiphart "was viewed talking to Petitioner and then punched Petitioner. Scott was then viewed pushing [Leiphart] out of the way and punching Petitioner as well." (*Id.*) While the actual supplemental narrative is not in the record, the Court concludes that, in light of Petitioner's representations, Petitioner has not demonstrated that, but for the Commonwealth's failure to disclose this narrative, the outcome of his trial would have been different. As discussed *supra*, the Commonwealth presented ample and sufficient evidence to support Petitioner's convictions for simple assault, possession of an instrument of crime, and harassment. Accordingly, Petitioner's seventh ground for relief will be dismissed.

### 6. Ground Eight

As his eighth ground for relief, Petitioner maintains that the trial court erred by denying his motion to appoint a neurological/head trauma expert. (Doc. No. 11

at 19.) According to Petitioner, he was assaulted by multiple individuals and received "numerous blows" to the head, causing him to fall on a hardwood floor. (*Id.* at 21.) Petitioner maintains that he had severe head trauma and a concussion, and that if he "performe[d] the proceeding criminal acts in a fog brought on by the blows to his head by the victim, [he] is not guilty of any crime." (*Id.*) He avers that the trial court denied him due process when it prohibited him from "using mental disease and capacity evidence directly to rebut the prosecution's evidence that Petitioner did form *mens rea*." (*Id.*)

With respect to this claim, the Superior Court wrote:

In his eighth claim, [Petitioner] argues the trial court erred in denying his motion for appointment of a neurological/head trauma expert. We disagree.

There are several procedural issues with [Petitioner's] motion. First, [Petitioner] filed this motion *pro se* on February 26, 2018. At that time, counsel represented [Petitioner]. As we have noted above, [Petitioner] is not entitled to hybrid representation. *See Padilla*, 80 A.3d at 1259. Therefore, courts in this Commonwealth "will not accept a *pro se* motion while an appellant is represented by counsel; indeed, *pro se* motions have no legal effect and, therefore, are legal nullities." *Commonwealth v. Williams*, 151 A.3d 621, 623 (Pa. Super. 2016) (citation omitted).

Secondly, at the time [Petitioner] filed the motion, the court had not granted him *in forma pauperis* status and retained counsel represented him. Our rules only require the allocation of funds for an expert witness for indigent defendants. *See* 50 P.S. § 7402(f). Lastly, the motion was untimely. The Pennsylvania Rules of Criminal Procedure require a defendant give notice of a defense of insanity or mental infirmity "not later than the time required for filing an omnibus pretrial motion provided in Rule 579." Pa. R. Crim. P. 568(a)(1). Here, that time

expired in May 2017, approximately ten months before [Petitioner] filed his motion. *See* Pa. R. Crim. P. 579(A).

Further, as the trial court correctly notes, a diminished capacity defense is only available if the Commonwealth charges a defendant with murder in the first degree. *See Commonwealth v. Russell*, 938 A.2d 1082, 1092 (Pa. Super. 2007) (citations omitted). Moreover, an insanity defense is generally only available in cases where the defendant acknowledges commission of the act, not in a case such as this where a defendant asserts his innocence. *See Commonwealth v. Hughes*, 865 A.2d 761, 788 (Pa. 2004) (stating, "[a] defense of insanity acknowledges commission of the act by the defendant, while maintaining the absence of legal culpability").

In any event, [Petitioner's] claim is based on his unsupported contention, "there [was] a reasonable probability that the [Petitioner] was suffering from a concussion due to the multiple blows to the head inflicted upon [Petitioner,]" during the altercation inside the bar and this probable concussion somehow negated his ability to form the requisite intent. Our review of the record shows [Petitioner] has never claimed he sought medical treatment following the incident and has never offered any medical documentation to support his speculative contention he suffered a concussion because of the altercation. For the reasons discussed above, [Petitioner's] eighth claim does not merit relief.

*Moss*, 2020 WL 618580, at *11.

The Supreme Court has held that "when a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense." *Ake v. Oklahoma*, 470 U.S. 68, 76 (1985). Thus, "fundamental fairness entitles indigent defendants to those 'basic tools' necessary to launch a meaningful defense." *Christy v. Horn*, 28 F. Supp. 2d 307, 319 (W.D. Pa. 1998) (citing *Ake*, 470 U.S. at 77). Thus, when an

indigent defendant demonstrates that his sanity at the time of the offense will be a significant factor at trial, the state must provide a mental health professional capable of evaluating the defendant and assisting in the preparation and presentation of the defense. *McWilliams*, 137 S. Ct. at 1794

In the instant matter, however, Petitioner has not demonstrated that the trial court violated his due process rights by denying his motion to appoint a neurological/head trauma expert. At the time, Petitioner was not indigent and was represented by retained counsel, which would have led to an improper use of funds had his motion been granted. Moreover, nothing in the record indicates that Petitioner acknowledged that he committed the acts alleged, which is a requirement to rely on an insanity defense, and, as noted *supra*, a diminished capacity defense was not available because he was not charged with first-degree murder. Finally, the record is devoid of any medical evidence substantiating Petitioner's contention that expert testimony was necessary. Petitioner, therefore, has not demonstrated that the state court's disposition of his second ground for relief was contrary to, or was an unreasonable application of, United States Supreme Court precedent. Moreover, Petitioner has not demonstrated that the state court's determination of the facts was unreasonable. Accordingly, his eighth ground for relief will be dismissed.

### 7.    Ground Nine

As his ninth ground for relief, Petitioner asserts that he was deprived of his Sixth Amendment right to a speedy trial, which warranted dismissal of the indictment.  (Doc. No. 11 at 21.)  With respect to this claim, the Superior Court stated:

> In his final claim, [Petitioner] argues the trial court erred in denying his speedy trial motion.  To address this issue we observe the following standards.
>
> "When reviewing a trial court's decision in a Rule 600 case, an appellate court will reverse only if the trial court abused its discretion." *Commonwealth v. Bradford*, 46 A.3d 693, 700 (Pa. 2012).  Moreover,
>
>> [t]he proper scope of review . . . is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court.  An appellate court must view the facts in the light most favorable to the prevailing party.
>>
>> ****
>>
>> So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime.  In considering these matters . . ., courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.
>
> *Commonwealth v. Peterson*, 19 A.3d 1131, 1134 (Pa. Super. 2011) (*en banc*), *affirmed*, 44 A.3d 655 (Pa. 2012) (citations omitted).
>
> We have reviewed the certified record, the briefs of the parties, and the trial court's opinion.  The trial court ably and methodically addressed this issue in its Rule 1925(a) opinion.  Accordingly, we adopt the trial

court's reasoning, found on pages 42-45 of its opinion, as our own for the disposition of this issue. *See* Trial Court Opinion, 4/26/19, at 42-45 (holding mechanical run date was January 15, 2018; trial was set for July of 2017 but defense counsel requested continuance due to unavailability; next available trial date was in September 2017; 57 days were attributable to defense; therefore trial started before adjusted mechanical run date of March 13, 2018); *see also* N.T., 3/7/18, at 24-27. [Petitioner's] ninth and final claim does not merit relief.

*Moss*, 2020 WL 618580, at *11.

As an initial matter, although Petitioner specifically asserted a Sixth Amendment violation on direct appeal (Doc. No. 30-1 at 786), the state courts only addressed is as a Rule 600 issue. The Third Circuit has specifically held that claims alleging violations of Pennsylvania's speedy trial rule are not cognizable. *See Wells v. Petsock*, 941 F.2d 253, 256 (3d Cir. 1991) (explaining that Rule 600, Pennsylvania's speedy trial rule, is not equivalent to the Sixth Amendment right). Thus, to the extent Petitioner bases this ground for relief upon state law, it is not cognizable and is subject to dismissal.

The Sixth Amendment guarantees a defendant's right to a speedy trial. When considering whether that right has been violated, courts must consider the following four (4) factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) prejudice to the defendant. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972). The Supreme Court has explained that "[t]he length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the

other facts that go into the balance." *Id.* Generally, delays of one (1) year or more may trigger analysis of the other *Barker* factors. *See Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992).

As noted *supra*, Petitioner was arrested on January 15, 2017, and was not tried until March 18, 2018. The delay of over one (1) year, therefore, triggers analysis of the other *Barker* factors. As noted by the state courts in their analysis of Petitioner's Rule 600 claim, the continuances were requested by defense counsel. Nothing in the record suggests that Petitioner ever asked counsel to file a speedy trial request. Furthermore, nothing in the record demonstrates that Petitioner's ability to present a defense was impaired in any way due to the delay, or that he suffered any other prejudice. Accordingly, Petitioner's ninth claim for relief will be dismissed.

### 8.  Ground Ten

As noted *supra*, Petitioner asserts several arguments regarding ineffective assistance of counsel in Ground Ten. Some of those arguments are unexhausted because Petitioner never raised them in state court. The claims that are exhausted, however, are as follows: (1) counsel failed to object to false statements made by the Commonwealth in their opening statement; (2) counsel failed to object to solicitation of false testimony; (3) counsel failed to object to assertions made in the Commonwealth's closing argument; (4) counsel failed to object to the Commonwealth vouching for a witness; (5) counsel failed to request certain jury

instructions; (6) constructive deprivation of counsel; and (7) counsel was ineffective for not being prepared for trial.

For claims of ineffective assistance of counsel raised in a habeas petition, the Court must consider the two components to demonstrating a violation of the right to effective assistance of counsel as set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." *See id.* at 688; *see also Williams v. Taylor*, 529 U.S. 362, 390-91 (2000). Second, under *Strickland*, the petitioner must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *See id.* at 694. The *Strickland* test is conjunctive and a habeas petitioner must establish both the deficiency in the performance prong and the prejudice prong. *See Strickland*, 466 U.S. at 687; *Dooley v. Petsock*, 816 F.2d 885, 889 (3d Cir. 1987). As a result, if a petitioner fails on either prong, he loses. *See Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must

be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted); *Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and prejudice components in any order, but need not address both if Mr. Foster fails to make a sufficient showing of one.").

The two-pronged test established in *Strickland* "qualifies as 'clearly established Federal law'" for purposes of the AEDPA. *See Rainey v. Varner*, 603 F.3d 189, 197 (3d Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 391 (2000)). Therefore, under § 2254(d)(1), the relevant inquiry in assessing ineffectiveness claims that have been adjudicated on the merits is whether the state court's decision involved an unreasonable application of *Strickland* or are based on an unreasonable determination of the facts. *See Jacobs v. Horn*, 395 F.3d 92, 107 n.9 (3d Cir. 2005). Moreover, Pennsylvania's three-pronged test for ineffective assistance claims, *see Commonwealth v Pierce*, 515 Pa. 153, 527 A.2d 973, 975-77 (Pa. 1987), is not contrary to *Strickland*, *see Jacobs*, 395 F.3d at 107 n.9.

As noted *supra*, the Superior Court dismissed Petitioner's ineffective assistance claims as premature. "In considering a § 2254 petition, we review the 'last reasoned decision' of the state courts on the petitioner's claims." *Simmons v. Beard*, 590 F.3d 223, 231-32 (3d Cir. 2009) (citing *Bond v. Beard*, 539 F.3d 256,

289-90 (3d Cir. 2008)).  The trial court considered Petitioner's ineffective assistance claims on their merits in its Rule 1925(a) opinion.  The Court, therefore, will consider that opinion when considering Petitioner's remaining ineffective assistance claims.  With respect to Petitioner's ineffective assistance claims, the trial court wrote:

> The [Petitioner] opines that the Commonwealth made false statements during its opening statement that prejudiced the [Petitioner].  First, the [Petitioner] argues that as this Court found him not guilty of public drunkenness then it was false for the A.D.A. to label the [Petitioner] as a drunk.  The first prong of the test for ineffectiveness queries whether there is any arguable merit to the claim.  *Commonwealth v. Cox*, 983 A.2d 666, 678 (Pa. 2009) (citation omitted).  There is no arguable merit to this claim.  All juries are informed that opening statements are not evidence.  Whether or not the [Petitioner] was in fact intoxicated has no bearing upon the charges that were being decided by the jury.  Brittany Graves described the [Petitioner's] behavior in a manner that evidenced his decline as he imbibed.  Danny Leiphart described the [Petitioner] as drunk.  Just because the Court chose not to credit the testimony does not mean that the Commonwealth misled the jury in their opening statement.  Moreover, the prosecutor, at the time of these remarks, was pursuing a public drunkenness charge.  It stands to reason that the Commonwealth believed that the evidence that would be adduced would bear out that charge.  Additionally, the third prong of the test for ineffectiveness is also not met where there was no prejudice to the [Petitioner].  As addressed *supra*, the Commonwealth presented sufficient evidence to convict the [Petitioner] of the charges that the jury found him guilty of.  Per *Pierce*, we cannot find that, but for any error on counsel's part in not objecting to the Commonwealth's opening, there was a reasonable probability of a different outcome to the proceeding.  786 A.2d at 213.  As the [Petitioner] cannot meet two of the prongs for the test for ineffectiveness, the claim cannot succeed.  Therefore, there would have been no merit to a hearing on this claim and we ask for affirmance.

Regarding the [Petitioner's] second sub-claim, that the Commonwealth's opening misled the jury regarding the initial incident in which Danny Leiphart punched the [Petitioner], we are unsure as to exactly what the [Petitioner] is claiming. Ms. Spangler testified that the [Petitioner's] wife left without him and prior to the [Petitioner] being punched by Danny Leiphart. This accords with the Commonwealth's opening statement. It is true that Danny Leiphart and Ron Weagley's testimony support the [Petitioner's] contention that he left with his wife and returned without her prior to the first instance of fisticuffs. However, an objection by trial counsel would not have succeeded where the Commonwealth was allowed to tell the jury what evidence they believed that they would elicit and so there is no merit to the claim. *Cox, supra*. Moreover, the [Petitioner] suffered no prejudice where the jury was fully aware that Danny Leiphart had been charged and convicted for his conduct in punching the [Petitioner] and where Danny Leiphart testified himself that he confronted the [Petitioner] upon the [Petitioner's] return. *Cox, supra*. This seems like nothing more than an instance in which *some* of the testimony slightly differed from the initial picture painted by the Commonwealth. It is a common occurrence in trials and not one for which we believe trial counsel could have been found ineffective. We pray for affirmance as to this matter.

[Petitioner] believes his trial counsel was ineffective for failing to object to Officer Miller testifying that he had no indication, beyond the [Petitioner's] statement to him, that the [Petitioner's] wife had returned to the bar. [Petitioner] submits that this is in direct contradiction of the testimony offered by Ron Weagley that the [Petitioner's] wife was outside of the bar after the first incident. We see no contradiction. Mr. Weagley testified that he discovered that the [Petitioner's] wife had been outside the bar during the initial incident. Unless we are wholly misunderstanding the [Petitioner's] point, A.D.A. Swisher, in questioning Officer Miller, was seemingly referring to whether there was any evidence of the [Petitioner's] wife having returned to the bar after having left with the [Petitioner]. This could have encompassed Mr. Weagley's testimony that the [Petitioner] *and his wife* were outside of the bar together after the first incident. Nothing in Mr. Weagley's testimony indicated that the [Petitioner's] wife stayed behind after she and Mr. Weagley convicted the [Petitioner] to go him. From this, Officer Miller might have gleaned that the [Petitioner's] wife did not return to the bar after this point. It is only the [Petitioner's] wife who

indicated that she did not accompany her husband home after he had spoken to Ron Weagley. The [Petitioner's] wife testified *after* Officer Miller. WE see no merit to the claim. *Cox, supra.* The [Petitioner] cannot meet the first prong of the test for ineffectiveness—a test in which all three prongs must be met. This PCRA claim would have failed and so we ask for affirmance.

The [Petitioner] alleges ineffectiveness in his counsel's failure to object to the Commonwealth attorney indicating that Ron Weagley testified that the [Petitioner] and his wife left together after the first incident. In support of this, the [Petitioner] cites to Ron Weagley testifying that he watched the [Petitioner] proceed down the alley after the first incident. This elides the fact that Mr. Weagley, in the referenced section, was speaking of the [Petitioner] and not of the location of the [Petitioner's] wife. The jury was free to make inferences regarding the testimony and decide for themselves what actually happened. In *Commonwealth v. Koehler*, the Supreme Court of Pennsylvania stated the following regarding prosecutorial misconduct:

> [A] claim of ineffective assistance grounded in trial counsel's failure to object to a prosecutor's conduct may succeed when the petitioner demonstrates that the prosecutor's actions violated a constitutionally or statutorily protected right, such as the Fifth Amendment privilege against compulsory self-incrimination or the Sixth Amendment right to a fair trial, or a constitutional interest such as due process. To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial. The Touchstone is fairness of the trial, not the culpability of the prosecutor. Finally, **not every intemperate or improper remark mandates the granting of a new trial;** ***reversible error occurs only when the unavoidable effect of the challenged comments would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict***.

36 A.3d 121, 144 (Pa. 2012) (internal citations and quotation marks omitted). We cannot find that the jurors would have been so prejudiced by this potential mischaracterization by the Commonwealth attorney as

to have been unable to render a true verdict. The [Petitioner], then, cannot meet the third prong of the test for ineffectiveness outlined in *Cox, supra*. Counsel could not have been found ineffective on this matter and so the [Petitioner] suffered no harm regarding his PCRA not having been heard on the matter. We request affirmance.

The [Petitioner] also points to the Commonwealth attorney characterizing witness testimony as supporting a view that the [Petitioner] was swinging knives and ranting and raving as an example of mischaracterization in his closing and to which defense counsel should have objected. As recounted in our facts section above, various witnesses testified that Ms. Spangler restrained [Petitioner's] knife-wielding hand or the blade itself and that the [Petitioner] was taunting Danny about the [Petitioner's] new knife. We see no mischaracterization. There is neither merit to the claim, nor prejudice to the [Petitioner]. We ask for affirmance as to this matter complained of on appeal.

The [Petitioner] believes his counsel was ineffective for failing to object to the prosecution's argument to not be confused by defense arguments about Danny Leiphart being the actual aggressor. *Ab initio*, we believe the claim is waived for failure to develop it. Even if it is sufficiently developed, there is no merit to this claim. *Cox, supra*. "A prosecutor 'has great discretion during closing argument' and is 'free [to present] his [or her closing] arguments with logical force and vigor.'" *Commonwealth v. Cash*, 137 A.3d 1262, 1273 (Pa. 2016) (quoting *Commonwealth v. Eichinger*, 108 A.3d 821, 836 (Pa. 2014)). And, "'[p]rosecutorial comments based on the evidence or reasonable inferences therefrom are not objectionable, nor are comments that merely constitute oratorical flair.'" *Ibid.* (quoting *Commonwealth v. Chmiel*, 30 A.3d 1111, 1146 (Pa. 2011). Additionally, the Commonwealth is permitted, in its closing, to confront the arguments of the defense. *See Commonwealth v. Miller*, 172 A.3d 632, 644 (Pa. Super. Ct. 2017). The Commonwealth was merely confronting the [Petitioner's] justification defense. It is facially apparent that the [Petitioner] cannot meet all three prongs of the test for ineffectiveness and this claim would have failed following a PCRA hearing. We seek affirmance as to this matter complained of.

The [Petitioner] submits numerous allegations of trial counsel ineffectiveness for failing to garner the giving of instructions he wished the jury to have heard. We address them as succinctly as possible.

There is no merit to a claim that trial counsel was ineffective for not procuring an instruction on the right to bear arms. The right to bear arms does not bear upon a charge of simple assault. The right to bear arms does not grant a person the right to assault someone. There is no merit to the claim. Trial counsel was not ineffective for failing to obtain instruction on this precept. The [Petitioner] cannot meet at least one of the prongs of a test in which he must meet all three and so the PCRA claim would have failed anyway.

The [Petitioner] was not prejudiced by trial counsel not requesting an instruction on justification—defense of others. For, even if counsel erred in failing to request a needed instruction, ineffectiveness will only be found where prejudice is also shown. *See Commonwealth v. Knight*, 611 A.2d 1199 (Pa. Super. Ct. 1992); *Commonwealth v. Potts*, 566 A.2d 287 (Pa. Super. Ct. 1989). The jury having heard that the [Petitioner] was taunting Danny Leiphart about [Petitioner's] new knife and making statements about wanting to hurt Danny and not Ms. Spangler, we cannot find that a different result would have occurred had the instruction been requested. The [Petitioner] cannot meet at least one of the prongs of a test in which he must meet all three and so the PCRA claim would have failed anyway.

The [Petitioner] was not prejudiced by his counsel's failure to request an instruction on use of force to protect property. As with his desired defense of others instruction, the force of evidence adduced to show that the [Petitioner] wished simply to assault Danny Leiphart convinces this Court that the [Petitioner] was not prejudiced. No different result would have occurred had the jury been instructed on the defense of property. Counsel was not ineffective on this charge. Moreover, though it is possible this Court has overlooked some evidence, we do not find evidence in the trial transcript regarding the [Petitioner] having been robbed or needing to defend property. Thus, he likely would not have been entitled to an instruction on the defense of property. *See Commonwealth v. Butler*, 533 A.2d 992 (Pa. 1987). The [Petitioner] cannot meet at least one of the prongs of a test in which he must meet all three and so the PCRA claim would have failed anyway.

For the reasons already stated (i.e. the [Petitioner] taunted Danny Leiphart and stated his desire to hurt Danny Leiphart), the [Petitioner's] additional desired instructions on use of a device to protect property, use of force to pass a wrongful obstructor, and peace officer's use of force in making an arrest also necessarily fail. The [Petitioner] simply was not prejudiced by any failure of his counsel to request his desired instructions where the overwhelming weight of the evidence demonstrated that the [Petitioner] was spoiling for a fight with Danny Leiphart. Counsel's actions did not prejudice the [Petitioner] and a PCRA hearing would not have developed any more useful evidence to support such a contention. We request affirmance as to these matters complained of on appeal.

The [Petitioner] complains that his counsel did not file motions he wished to have been filed. It must be noted that the [Petitioner] complains of the actions of his first trial counsel, who was replaced following the mistrial. The [Petitioner] ignores the ethical duty of lawyers not to burden courts with motions they deem frivolous. Moreover, the [Petitioner] filed *numerous* pretrial motions *pro se*, which were addressed by this Court prior to trial. As addressed in our response to the [Petitioner's] claim that he was deprived of his right to self-represent, the transcripts bear out that the [Petitioner] sought at all times to avail himself of all of the advantages of counsel and of being *pro se*. His *pro se* motions were addressed by this Court. Thus no prejudice accrued to the [Petitioner]. The [Petitioner] cannot meet at least one of the prongs of a test in which he must meet all three and so the PCRA claim would have failed anyway. We therefore humbly request affirmance on this matter.

The [Petitioner] also complains that his first trial counsel admitted his guilt to certain crimes in contravention of the holding in *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018) (holding in part that counsel could not cede defense of a charge without consent of the accused). We agree wholeheartedly with the [Petitioner]. However, the rub is that [Petitioner's] first trial ended in a mistrial. Any failures of his first trial counsel did not harm the [Petitioner] on retrial. The [Petitioner] has suffered no prejudice. The [Petitioner] cannot meet at least one of the prongs of a test in which he must meet all three and so the PCRA claim would have failed anyway. We pray for affirmance as to this matter complained of on appeal.

The [Petitioner] argues that his trial counsel was ineffective as a result of the limited time that she and the [Petitioner] spent in preparation together. We disagree.

To begin, we note that, at the conclusion of the mistrial, the following exchange occurred with [Petitioner's] first trial counsel, whose firm supplied [Petitioner] with retrial counsel:

> Court: Well, I'm noting that you indicated yesterday there was an attorney prepared to take your place, so I'm kind of holding you to that.
>
> Defense: Absolutely, Your Honor.

Moreover, the [Petitioner] was aware, *at the time of trial*, of the issues he highlights as wishing to have discussed with his trial counsel—save for a lack of time. Though the [Petitioner] alleges he did not have enough time to prepare with substitute counsel, the [Petitioner] could have alerted counsel to these issues *during trial*. Finally, this complaint lacks merit where it contradicts, in part, the [Petitioner's] earlier claim that this Court denied his right to self-representation. By his own complaints, the [Petitioner] alleges that he was ready to steward his own case. It follows, then, that the [Petitioner] was perfectly capable of aiding his trial counsel and informing her of areas that he wished her to delve into. Specifically, [Petitioner's] allegation that his $100.00 bill and $200.00 Carhartt jacket were stolen at Kiro's could have easily been discussed with his counsel during the course of the trial and put to the test. The [Petitioner's] allegation that his vehicle was parked at "T7S Trophies" is incongruent with the testimony of the [Petitioner's] wife and Ron Weagley about the [Petitioner] walking him after the first altercation when Danny Leiphart and his cohort were still inside Kiro's. The [Petitioner] does not allege that counsel was unwilling to hear him out; but, rather, that there was insufficient time with his trial counsel. This is patently false. There is no merit to this claim of ineffectiveness.

In addition to failing to meet the first prong of the test for ineffectiveness, the [Petitioner] cannot meet the prejudice prong of the test for ineffectiveness. The overwhelming evidence, as illustrated in the fact section of this opinion, indicates that the [Petitioner] was taunting Danny Leiphart with a knife, was attempting to get at Danny,

and proclaiming his desire to harm Danny. Moreover, the [Petitioner's] wife called Ron Weagley to warn him that the [Petitioner] was, depending on whose version of events is to be believed, returning with a knife or "something" and not to allow the [Petitioner] entry to the bar. This evidences the [Petitioner's] wife's state of mind regarding the [Petitioner's] return to Kiro's. Additionally, the [Petitioner] was carrying a kitchen drawer's worth of knives. Though the [Petitioner] is sure to argue that not all of the knives located were found on him, some knives were found on the [Petitioner] and others were located along the [Petitioner's] path of travel. As a typical person could defend themselves with, at most, two knives at one time, the jury could reasonably infer nefarious intent from the sheer number of knives the [Petitioner] brought to an altercation in which no one testified that Danny Leiphart displayed any weaponry. The [Petitioner] suffered no prejudice from lack of evidence being presented that he may have had some legitimate reasons to return to the bar. The [Petitioner's] illegitimate reason was on full display for the jury. The [Petitioner] cannot meet at least one of the prongs of a test in which he must meet all three and so the PCRA claim would have failed anyway. We hope for affirmance on this matter complained of on appeal.

(Doc. No. 30-1 at 817-27) (sub-headings and citations to the record omitted).

Upon review of the record, the Court concurs with the trial court's thorough opinion regarding Petitioner's ineffective assistance of counsel claims. As discussed *supra*, the Commonwealth presented sufficient evidence to convict Petitioner such that Petitioner was not prejudiced by counsel's failure to take any of the actions set forth in the trial court's Rule 1925(a) opinion. Petitioner, therefore, has not demonstrated that the state court's disposition of his second ground for relief was contrary to, or was an unreasonable application of, United States Supreme Court precedent. Moreover, Petitioner has not demonstrated that the state court's

determination of the facts was unreasonable. Accordingly, his tenth claim for relief will be dismissed.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c)(1)(A), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding initiated pursuant to 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In the case at bar, jurists of reason would not find the disposition of this case debatable. Accordingly, the Court will not issue a COA in this case.

## V.     CONCLUSION

For the following reasons, Petitioner's amended § 2254 petition (Doc. No. 11) will be denied and a COA will not issue.  An appropriate Order follows.


s/ Sylvia H. Rambo
United States District Judge

Dated: July 14, 2021